IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| LINDA JOHNSON, WHITNEY McNEIL, ROGELIO B. MENDOZA, On behalf of THEMSELVES and All Others Similarly Situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | No. 2:07-CV-51 |
| v. | ) ) ) | |
| KOCH FOODS, INC., | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This civil action is before the court on "Koch Foods, LLC's Motion for Decertification or, in the Alternative, Motion for Separate Trials" [doc. 104]. Plaintiffs have filed a response in opposition [doc. 137], and defendant, Koch Foods, LLC ("Koch Foods"), has submitted a reply [doc. 157]. Oral argument is unnecessary, and the motion is ripe for the court's consideration and determination. For the reasons set forth herein, the motion will be denied.

I.

*Background*

Koch Foods operates two chicken processing facilities in Morristown, Tennessee. One is the live processing plant ("live plant"), and the other is the de-bone plant.

At the live plant, the chickens are killed, processed, and packaged. The de-bone plant has no slaughter operations. Workers in the de-bone plant de-bone the processed chicken and also cut it into various parts. In addition, some of the processed chicken is marinated at the de-bone plant.

Plaintiffs are production workers at both plants who have brought this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, seeking in part unpaid and overtime wages. Plaintiffs contend that they are not compensated for the time it takes them to don and doff the protective gear and clothing they must wear and that they not compensated for the time they spend sanitizing their gear. Koch Foods pays plaintiffs based on "production line time," which means plaintiffs are paid only while a production line is running. Workers must be at their position on the line properly dressed when the line begins to run. Plaintiffs contend that they should be compensated for the time spent donning, doffing, and sanitizing their gear. They also contend that they do not receive a bona fide 30 minute meal break because part of that time is spent donning, doffing, washing and returning to the production line on time.

Plaintiffs filed their complaint on February 22, 2007. On December 11, 2007, the court entered an agreed order [doc. 30] conditionally certifying a class "consisting of current and former Koch Foods employees at Koch Foods debone plant and live processing plants in Morristown, Tennessee (1) who worked at any time since October 2, 2004 and (2) whose pay was computed in whole or in part based on production line time (the "Conditional

Class")."  Notice was issued pursuant to that order.  This case is now before the court on Koch Foods motion to decertify that conditional class.

II.

*Analysis*

**Decertification**

Pursuant to § 216(b) of the FLSA, employees can sue on their own behalf or on the behalf of "similarly situated" persons.  "Section 216(b) establishes two requirements for a representative action: 1) the plaintiffs must actually be 'similarly situated,' and 2) all plaintiffs must signal in writing their affirmative consent to participate in the action."  *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006) (citing 29 U.S.C. § 216(b); *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 167-68 (1989)).

"Although the FLSA does not define the term 'similarly situated,' courts generally do not require prospective class members to be identical."  *Moss v. Crawford & Co.*, 201 F.R.D. 398, 409 (W.D. Pa. 2000).  The Sixth Circuit has adopted a two-step inquiry for the determination of whether members of the class are in fact similarly situated.  *See Comer*, 454 F.3d at 546; *see also Wilks v. Pep Boys*, No. 3:02-0837, 2006 WL 2821700, at *2 (M.D. Tenn. Sept. 26, 2006) (cases cited therein).  The first step occurs at the "notice stage," which is usually in the initial part of the case when the court determines whether notice of the lawsuit should be given to the putative members of the class.  *Pep Boys*, 2006

3

WL 2821700, at *2 (citing *White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 366 (E.D. Tenn. 2006)). At this stage, a fairly lenient standard is used to determine whether plaintiffs are similarly situated for a class to be preliminarily certified. *See Frank v. Gold'n Plump Poultry, Inc.*, No. 04-CV-1018 (PJS/RLE), 2007 WL 2780504, at *2 (D. Minn. Sept. 24, 2007).

The second step occurs after discovery has been taken and is precipitated if and when the defendant files a motion for decertification of the class. *See Pep Boys,* 2006 WL 2821700, at *2; *Moss*, 201 F.R.D. at 409. "At this juncture, the court uses a higher standard to analyze the similarly situated issue." *Moss,* 201 F.R.D. at 409 (citations omitted); *see also Comer*, 454 F.3d at 547 ("At the second stage, following discovery, trial courts examine more closely the question of whether particular members of the class are, in fact, similarly situated.").

There are primarily three factors that district courts consider at the decertification stage to determine whether the plaintiffs who have opted in are similarly situated. These factors are: "(1) the disparate factual and employment settings of the individual plaintiffs, such as a) job duties; b) geographic location; c) supervision; and d) salary; (2) the various defenses available to defendant that appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Pep Boys*, 2006 WL 2821700, at *3 (citing *Moss*, 201 F.R.D. at 409).

4

As noted above, an agreed order was entered in this case in which the court conditionally certified this action as a collective action under 29 U.S.C. § 216(b) and identified the conditional class. The court authorized notice to be distributed to the conditional class, and approximately 150 current and former Koch Foods employees have opted into this lawsuit. Koch Foods now seeks to decertify the class claiming that the plaintiffs are not all similarly situated and therefore this case cannot go forward as a collective action. At this stage, the court employs the higher standard and the factors described above to resolve this issue. In doing so, the court has reviewed the hundreds of pages submitted in support of and opposition to this motion.

Koch Foods has presented extensive amounts of evidence and argues in exhaustive detail what it says are the many differences among the plaintiffs. As noted, the court has reviewed this evidence and will not specifically cite to it here. Koch Foods points out that the live and de-bone plants perform different functions in the chicken processing sequence. The evidence also shows that regarding both plants there are many different departments, work and meal shifts, clothing items worn by employees, and donning and doffing practices of the various employees. Koch Foods also points out that the plaintiffs work for different supervisors who exercise different levels of flexibility regarding whether an employee is marked tardy if he or she is late coming to the production line.

Koch Foods also argues that the defenses available to it require decertification. Koch Foods anticipates presently individualized defenses, such as that some of the plaintiffs are already paid for donning, doffing, washing, and walking time. It also expects to show that some employees are not required to wear various clothing items and that other clothing items benefit workers in different ways, depending on the employee's position and plant location.

Based on these arguments, Koch Foods contends that the plaintiffs are not similarly situated. Therefore, the class should be decertified; the opt-in plaintiffs should be dismissed without prejudice; and the named plaintiffs should proceed with their individual actions.

In their response, plaintiffs do not dispute that there are disparate factual and employment settings, nor do they dispute that employees use different equipment and protective gear. They contend, however, that these differences are not material because the plaintiffs are all subject to a common policy or plan, payment by production line time, which they allege violates the FLSA. Plaintiffs argue that this common policy or plan overrides or outweighs the myriad of factual and employment differences. They also contend that any defenses Koch Foods can assert will be applicable to all the plaintiffs.

> One of the factors material to many courts' analysis of the plaintiffs' factual and employment settings is whether they were all impacted by a "single decision, policy, or plan." *See Moss*, 201 F.R.D. at 409-10 (citing *Thiessen v. Gen. Elec. Capital Corp.*, 996 F. Supp. 1071, 1082 (D. Kan. 1998)). The existence of this commonality may assuage concerns about plaintiffs'

6

> otherwise varied circumstances. *See Hill v. Muscogee County Sch. Dist.*, No. 4:03-CV-60, 2005 WL 3526669, at *3-*4 (M.D. Ga. Dec. 20, 2005) (finding that the plaintiffs "had met their burden of showing that they [were] similarly situated with regard to employment setting and job duties by presenting substantial allegations of a pattern of potential FLSA violations); *Moss*, 201 F.R.D. at 410 (finding that the plaintiffs' claim that they were subjected to a common, impermissible practice trumped the disparity in their employment situations).

*Pep Boys*, 2006 WL 2821700, at *3.

Plaintiffs have submitted evidence that they are paid by production line time and that this payment does not capture donning and doffing, waiting, sanitizing or walking. They have shown that they must be washed and dressed when they take their places on the production line, but they are not paid until the line starts to run. The evidence submitted by plaintiffs also shows that production line time does not capture the time for doffing gear at the beginning of the meal break; donning gear at the end of the meal break; or washing and sanitizing during the meal break. Koch Foods deducts thirty minutes each day from plaintiffs' shift time for the unpaid meal break. Plaintiffs argue that because they are all subject to the same policy or plan, i.e. payment by production line time that does not capture tasks they must perform without compensation, they are similarly situated, and this commonality overcomes the factual and employment differences emphasized by Koch Foods.

In *Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870 (N.D. Iowa 2008), the district court dealt with a similar circumstance.[1] Plaintiffs were current and former

---

[1] The district court in *Bouaphakeo* was addressing conditional certification at the first step; (continued...)

employees of a pork processing plant operated by Tyson Foods who were paid on a "gang time" system. "Gang time is sometimes called 'line time,' 'shift time,' or 'mastercard time'." *Id.* at 879 n.2. Plaintiffs, like those in this case, claimed this system violated the FLSA. The district court found that there were "some very big factual differences" among the hourly employees because they were spread out across six departments and they performed different duties under different supervisors. However, the court concluded that there was a common factor among the employees, the gang time pay system, that bound the putative plaintiffs together. The court held that the "potential plaintiffs are similarly situated if the collective action class is limited to only those production employees that are paid via gang time. Gang time, after all, is the company-wide policy that Plaintiffs claim violates the FLSA." *Id.* at 900.

The court believes that in this case the common policy or practice of paying plaintiffs by production line time is the factor that binds them together. Because of this common factor, the factual differences and the variations in plaintiffs' employment settings do not make this collective action improper. The class is limited to those workers, as specified in the notice, "whose pay was computed or is computed based in whole or in part

---

[1](...continued)
however, it applied the more demanding standard and factors applied in the second step because of the amount of discovery that had been conducted in the case. *Bouaphakeo*, 564 F. Supp. 2d at 896-97.

8

on production line time."[2] Viewed from this perspective, the argument by Koch Foods concerning its need to put on individualized defenses carries less weight as it should have a general defense to the use of this common pay practice.[3] In addition, allowing this case to go forward as a collective action "takes into account the 'fundamental purpose' of the FLSA by lowering the costs to plaintiffs and efficiently resolving the issues in one proceeding." *Id*.

> The Sixth Circuit has specifically noted that the FLSA "must not be interpreted or applied in a narrow, grudging manner." *See Dunlop* [*v. Carriage Carpet Co.*], 548 F.2d [139,] 144 [(6th Cir. 1977)]. As such, the court's decision to allow the plaintiffs to proceed collectively is in line with Congress's determination that defendants will not always have the opportunity to pursue individual defenses against FLSA plaintiffs but, instead, must collectively defend a suit that is so pursued. *See* 29 U.S.C. § 216(b).

*Pep Boys*, 2006 WL 2821700, at *8.

### Request for Separate Trials

Koch Foods argues in the alternative that if the court does not decertify this action, the court should order separate trials for the two plants, live and de-bone. Koch Foods relies on Fed. R. Civ. P. 42(b), which provides in pertinent part: "For convenience, to

---

[2] The court leaves open the possibility that the formation of sub-classes of plaintiffs may or may not be appropriate prior to trial.

[3] Koch Foods asserts that a very few plaintiffs receive compensation for donning and doffing, including Rogelio Mendoza, a named plaintiff. However, from the limited deposition submission, it is unclear whether Mendoza is still scheduled at times to work on a production line. In any event, this is an issue for the plaintiffs to address.

9

avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."

When considering whether to order separate trials, a court "must consider several issues such as potential prejudice to the parties, potential confusion to the jury, and the relative convenience and economy which would result." *In re Beverly Hills Fire Litig.*, 695 F.2d 207, 216 (6th Cir. 1982) (footnote and citations omitted). In addition, "[i]t is well settled that the ordering of separate trials is within the sound discretion of the trial judge." *Id*. (citations omitted); *see also Climer v. Dillenbeck*, No. 08-cv-11074, 2009 WL 2168867, at *1 (E.D. Mich. July 21, 2009) (quoting 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2388 (3d ed., 2008)("It is well-established by a wealth of case law that ultimately the question of whether to conduct separate trials under Rule 42(b) should be, and is, a matter left to the sound discretion of the trial court on the basis of the circumstances of the litigation before it.")).

The court has considered the circumstances of this case and the relevant factors set out above and finds no substantial reason for two trials. The plants are located in the same complex, and while they perform different types of jobs, the workers in both plants are paid on the basis of production line time. This common policy or practice was the primary factor in defeating decertification. The differences between the plants, like the differences between the various jobs performed by the workers, can be dealt with at trial. Therefore, the court will deny the request by Koch Foods to have separate trials for each plant.

10

For the reasons stated above, Koch Foods' motion for decertification or alternatively for separate trials will be denied. An order consistent with this opinion will be entered.

ENTER:

        s/ Leon Jordan
United States District Judge