IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

LINDA JOHNSON, WHITNEY McNEIL, )
ROGELIO B. MENDOZA, On behalf of )
THEMSELVES and All Others Similarly )
Situated, )
 )
   Plaintiffs, )
 )  No. 2:07-CV-51
 )
v. )
 )
KOCH FOODS, INC., )
 )
   Defendant. )

## MEMORANDUM OPINION

   This civil action is before the court for consideration of the motions for summary judgment filed by the parties. Plaintiffs have filed a motion for summary judgment as to all their claims against defendant [doc. 99]. Defendant has filed two motions for summary judgment: "Koch Foods, LLC's Motion for Summary Judgment on Count I (All Claims Except Plaintiffs' Claim for Compensation for Meal Period Time)" [doc. 93] and "Koch Foods, LLC's Motion for Summary Judgment on Count II (Claim for Compensation for Meal Period Time)" [doc. 96]. Also before the court is "Plaintiffs' Motion for Court-Ordered Mediation" [doc. 158]. The parties have fully responded to each motion. Oral argument is not necessary, and the motions are ripe for resolution by the court.

For the reasons stated herein, plaintiffs' motion for summary judgment will be denied. Koch Foods' motion for summary judgment as to Count I will be granted in part and denied in part. Koch Foods' motion for summary judgment as to Count II will be denied. Plaintiffs' motion for court-ordered mediation will be granted.

## I.

### *Background*

### 1. Factual Background

Defendant Koch Foods, LLC ("Koch Foods")[1] operates a chicken processing facility in Morristown, Tennessee. The complex contains two plants, the live processing plant ("live plant") and the de-bone plant. At the live plant, chickens are killed, processed, and packaged. At the de-bone plant, previously processed chickens are de-boned, cut into parts, and packaged; some parts are also marinated before packaging. The de-bone plant conducts no slaughter operations. The live plant has three production departments; the de-bone plant has five production departments.

Plaintiffs are current and former hourly paid production workers at both plants. Production workers at both plants are paid based on "line time." [2] At the beginning of a shift,

---

[1] Defendant was originally named as Koch Foods, Inc. By an agreed order [doc. 25], Koch Foods LLC was substituted in the complaint as the correct defendant. However, the caption of the case remains as originally filed, since the court's policy is not to alter a case caption without order of the court.

[2] Plaintiffs may also be referred to herein as "workers" or "production workers."

a supervisor or lead person swipes a "master badge" at the scheduled start time, when the chicken product arrives, and swipes it again at the department's end time, when the chicken product has finished being processed. Plaintiffs are expected to be at their position on the line ready to work when the chicken product arrives at their station or they are considered tardy. Workers swipe personal time cards at time clocks when they enter and leave the plants, though they are not required to clock in at a specific time. This time keeping method, the Kronos system, is largely for attendance purposes because production workers are paid based on the department's production line time, which is confirmed by the department's supervisor. In addition, Koch Foods deducts thirty minutes from plaintiffs' scheduled shift time to reflect an unpaid meal break.

Plaintiffs and any employees who enter the processing area must wear a combination of sanitary and safety gear. The protective items vary depending on particular job responsibilities. Workers in the production area of the live plant generally must wear a smock, hairnet, beardnet, ear plugs, rubber boots, and a hard hat or "bump cap." Workers in the production area of the de-bone plant are required to wear a smock, hairnet, beardnet, ear plugs, and safety glasses. Workers who use scissors or knives must wear Kevlar or mesh gloves and/or arm guards. Optional items that workers can choose to wear are plastic aprons, plastic sleeves, and cotton gloves. Any worker who touches the chicken product is required to wear rubber gloves.

A clean smock must be obtained daily before going to the production line. Dirty smocks are deposited in bins at the end of the shift. The rubber boots that workers at the live plant are required to wear are put on in the boot room and must be taken off and left in the boot room at the end of the shift. The smocks and boots are not allowed to be taken from the plant. At both plants, other items such as aprons, gloves, and plastic sleeves may be obtained weekly and exchanged if necessary. Mesh gloves and arm guards are at a worker's station if needed for his or her job. If workers leave the production floor during breaks, they need to remove their smock and, if worn, their gloves, apron, and sleeves. Other standard items like hairnets or bump caps can remain on at all times.

Workers who enter production areas are required to wash their hands, including washing their hands while wearing their gloves. They must wash their hands before the start of their shift and after returning from breaks. Hand washing is also required when leaving the processing area.

The line-time payment system does not capture the time for acquiring, donning, doffing, and washing. Plaintiffs are expected to have all their sanitary and protective gear on and to have done the required washing by the time they take their position on the production line. They are paid only for the time the production line is in operation.

Since April 13, 2006, there has been in effect a Collective Bargaining Agreement ("CBA") between Koch Foods and the workers' representative union. The parties have entered into a stipulation concerning the CBA, which will be addressed in the

4

court's legal analysis section.

Plaintiffs have brought this collective action under § 216(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, claiming that Koch Foods' method of compensating hourly production workers, "line time," does not compensate them for: (1) retrieving, donning and doffing required and necessary sanitary and protective gear and equipment; (2) sanitizing and washing required protective gear and equipment and washing hands; and (3) walking to and from the supply room area, washing stations, and work stations. Plaintiffs also claim that they do not receive a bona fide thirty minute lunch period because they have to perform washing, walking, doffing and donning during the uncompensated meal period and are not completely relieved from duty for the entire 30 minutes. Plaintiffs seek unpaid wages, overtime, and liquidated damages. They have moved for summary judgment on all their claims.

Koch Foods in its motion for summary judgment contends that: (1) plaintiffs' donning, doffing, and washing claims are precluded under § 203(o) of the FLSA; (2) the Portal-to-Portal Act precludes plaintiffs' claims; and (3) the donning, doffing, and washing at issue is not "work" as contemplated by the FLSA. Further, Koch Foods argues that even if an activity is considered "work" and outside the Portal-to-Portal Act, the *de minimis* doctrine precludes plaintiffs from recovering on their claims. Koch Foods also argues that the pre- and post-production walking time claimed by plaintiffs is not compensable pursuant to the Portal-to-Portal Act.

In a separate motion for summary judgment, Koch Foods contends that plaintiffs cannot recover on their meal period claim. Koch Foods contends that plaintiffs cannot show that: (1) they are not "substantially relieved" of their duties during their meal periods; and (2) they spend their meal period "predominately" for the benefit of Koch Foods.

## 2. Procedural Background

On February 22, 2007, plaintiffs filed their single-count complaint against defendant on behalf of themselves and other similarly situated current and former employees of Koch Foods [doc. 1]. The complaint alleges violations of the FLSA and was brought as a collective action pursuant to 29 U.S.C. § 216(b). On December 11, 2007, the court entered an agreed order conditionally certifying a class of plaintiffs and ordering notice be sent in both English and Spanish [doc. 30]. Plaintiffs filed a motion for leave to file an amended collective action complaint [doc. 70] on February 3, 2009. Plaintiffs sought to add a second count specifically seeking compensation for failure to provide them with a bona fide meal period. The court granted plaintiffs' motion [doc. 84], and plaintiffs filed their amended collective action complaint [doc. 85] on March 17, 2009. Koch Foods filed a motion for decertification on May 22, 2009, seeking to decertify the conditional class and alternatively to have separate trials [doc. 104]. In a memorandum opinion and order entered September 25, 2009 [docs. 164, 165], the court denied defendant's motion. This case is now before the court on the parties' timely filed motions for summary judgment.

6

II.

*Summary Judgment Standard*

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party may discharge its burden by demonstrating that the non-moving party has failed to establish an essential element of that party's case for which he or she bears the ultimate burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party need not support its motion with affidavits or other materials negating the opponent's claim. *Id.* at 323. Although the moving party has the initial burden, that burden may be discharged by a "showing" to the district court that there is an absence of evidence in support of the non-moving party's case. *Id.* at 325 (emphasis in original).

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that

supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Id.* at 255. The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

## III.

### *Analysis*

### 1. The FLSA

Congress enacted the FLSA in 1938 "to correct existing 'labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers.'" *In re Cargill Meat Solutions Wage & Hour Litig.*, 632 F. Supp. 2d 368, 377 (M.D. Pa. 2008) (citing 29 U.S.C. § 202(a)). Section 207(a)(1) of the FLSA provides:

> Except as otherwise provided in this section, no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half-times the regular rate at which he is employed.

*Brock v. City of Cincinnati*, 236 F.3d 793, 800 (6th Cir. 2001) (quoting 29 U.S.C. § 207(a)(1)). "Neither 'work' nor 'workweek' is defined in the statute." *IBP, Inc. v. Alvarez*, 546 U.S. 21, 25 (2005). Early Supreme Court cases defined these terms broadly. *Id.* The

8

Supreme Court in *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944) defined "work" as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." In *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), the Supreme Court "defined 'the statutory workweek' to 'includ[e] all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace' . . . [and] held that the time necessarily spent by employees walking from timeclocks near the factory entrance gate to their workstations must be treated as part of the workweek." *IBP*, 546 U.S. at 25-26 (citing *Anderson*, 328 U.S. at 690-92).

In 1947, in response to *Anderson* and "[b]ased on findings that judicial interpretations of the FLSA had superseded long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities, immense in amount and retroactive in operation," Congress passed the Portal-to-Portal Act. *IBP*, 546 U.S. at 26 (internal quotation marks and citation omitted). The Portal-to-Portal Act "narrowed the coverage of the FLSA by excepting two activities that had been treated as compensable under [Supreme Court] cases: walking on the employer's premises to and from the actual place of performance of the principal activity of the employee, and activities that are 'preliminary or postliminary' to that principal activity." *Id*. at 27. The Portal-to-Portal Act provides in pertinent part:

9

> [N]o employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended, . . . on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee . . .
>
> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform and
>
> (2) activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a). Other than these express exceptions, "the Portal-to-Portal Act does not purport to change [the Supreme Court's] earlier descriptions of the terms 'work' and 'workweek,' or to define the term 'workday'." *IBP*, 546 U.S. at 28. Regulations promulgated by the Secretary of Labor after the Portal-to-Portal Act was passed "concluded that the statute had no effect on the computation of hours that are worked 'within' the workday." *Id.* Additionally, "the Department of Labor has adopted the continuous workday rule, which means that the 'workday' is generally defined as 'the period between the commencement and completion on the same workday of an employee's principal activity or activities.'" *Id.* at 29 (citing 29 CFR § 790.6(b)).

Two years after enacting the Portal-to-Portal Act, Congress again amended the FLSA by adding among other things the provision that is currently codified at 29 U.S.C. § 203(o). *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 958 (11th Cir. 2007). Section 203(o)

removes from compensability time spent washing and changing clothes at the start and end of each workday if the terms of the statute are met. The statute provides:

> Hours Worked - - In determining for the purposes of sections 206 and 207 of this title the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee.

29 U.S.C. § 203(o).

## 2. Section 203(o) Defense

As referenced above, the FLSA contains a provision that removes from compensability time spent changing clothes and washing at the beginning and end of the workday. 29 U.S.C. § 203(o). Koch Foods contends that plaintiffs' claims for donning and doffing of their protective and safety gear before and after their shifts are barred by § 203(o). Koch Foods also claims that the washing plaintiffs perform before and at the end of their shifts is also barred.

The parties have entered into a stipulation concerning the CBA and § 203(o) which provides in pertinent part as follows:

> 1.    That "a bona fide collective bargaining agreement," as contemplated by § 203(o) of the Fair Labor Standards Act, is in effect between the United Food and Commercial Workers, Local 1995 and Koch Foods, LLC ("Koch Food"), effective April 13, 2006 through March 7, 2009 ( the "Collective Bargaining Agreement"), at Koch Foods' Morristown, Tennessee facilities

11

where Plaintiffs and opt-in plaintiffs work or worked during the applicable statutory period for the claims asserted in this litigation; and,

2.      That a "custom or practice" exists under the Collective Bargaining Agreement as to Koch Foods excluding from compensable working time the time spent outside of production line time donning and doffing items, including hair nets, smocks, aprons, cotton gloves, rubber gloves, earplugs, hard-hats, cutting gloves, safety glasses, beard nets, boots, and sleeves; and,

3.      That a "custom or practice" exists under the Collective Bargaining Agreement as to Koch Foods excluding from compensable working time the time employees spend washing outside of production line time; and,

4.      That the only issue that the Court must decide in determining the applicability of Koch Foods' 203(o) defense in this action is whether the donning and doffing described above constitutes "changing clothes" within § 203(o) of the Fair Labor Standards Act and whether the washing described above constitutes "washing" within § 203(o) of the Fair Labor Standards Act . . . .

The parties' stipulation appropriately addresses the issues concerning the application of the § 203(o) defense. "Section 203(o) applies if two conditions are met: (1) there must be a bona fide collective bargaining agreement that excludes, by its express terms or a custom or practice thereunder, time spent 'changing clothes' from measured working time; and (2) the activities at issue must constitute 'changing clothes' within the meaning of the statute." *Andrako v. United States Steel, Corp.*, 632 F. Supp. 2d 398, 406-07 (W.D. Pa. 2009) (citing *Figas v. Horsehead Corp.*, No. 06-1344, 2008 WL 4170043, at *6 (W.D. Pa. Sept. 3, 2008); *Kassa v. Kerry, Inc.*, 487 F. Supp. 2d 1063, 1065 (D. Minn. 2007); *Sisk v.*

*Sara Lee Corp.*, 590 F. Supp. 2d 1001, 1005-06 (W.D. Tenn. 2008)).  The stipulation shows that the first element has been satisfied because the parties have agreed that there exists a custom or practice under the CBA to exclude from compensable time the donning and doffing and washing that the plaintiffs perform outside of production line time at the beginning and end of their shifts.  Therefore, the court proceeds to determine whether the defendant can satisfy the second element of the defense.

### A. **Changing Clothes**

The Sixth Circuit has not addressed what constitutes "changing clothes" under § 203(o).  The federal courts that have addressed the issue have come to different conclusions.  In *Alvarez v. IBP, Inc.*, 339 F.3d 894 (9th Cir. 2003), the Ninth Circuit held that § 203(o) applies only when the particular protective gear at issue "plainly and unmistakably" falls within the meaning of § 203(o)'s "clothing" term.  *Id.* at 905. The court determined that the meaning of "clothing" did not encompass the specialized protective gear the plaintiffs were required to wear.  In reaching its conclusion, the Ninth Circuit considered § 203(o) to be an exemption from FLSA requirements which is to be narrowly construed against the employer and which should not be applied "except in contexts *plainly and unmistakably within the given exemption's terms and spirit.*"  *Id.* (citations omitted).

The Eleventh Circuit in *Anderson v. Cagle's, Inc.*, 488 F.3d 945 (11th Cir. 2007) addressed protective gear worn by chicken processing plant employees in the context

13

of § 203(o) and reached a different result. The protective items in *Anderson* included smocks, hair/beard nets, gloves, and hearing protection. *Id*. at 949. The Court found that the protective garments worn by the plaintiffs "fit squarely within the commonly understood definition of 'clothes' as that term is used in § 203(o)." *Id*. at 956. The Court rejected the Ninth Circuit's conclusion that § 203(o) is an exemption to be narrowly construed against the employer. Rather, the Eleventh Circuit concluded that "§ 203(o) is not an exemption under the FLSA but is instead a definition that limits the scope of the FLSA's key minimum wage and maximum hour provisions." *Id*. 957. In reaching its conclusion, the Court noted that "[n]one of the cases on which the Ninth Circuit relied held that § 203(o) constituted an exemption under the FLSA. Indeed, none of these cases even discussed § 203(o)." *Id*. The Eleventh Circuit also looked to the circumstances surrounding the passage of the provision that is codified at 29 U.S.C. § 203(o) and concluded that "construing § 203(o) narrowly against employers as an FLSA 'exemption' contravenes not only basic tenets of statutory construction but also the readily apparent intent of the legislators who approved the amendment's language." *Id*. at 958 ("As the sponsor of the relevant amendment explained to fellow representative, the purpose of the amendment was to 'avoid[ ] another series of incidents which led to the portal-to-portal legislation.'").

District courts that have addressed the same issue have come to differing conclusions as well. *Compare, e.g.*, *Sisk v. Sara Lee Corp*., 590 F. Supp. 2d 1001 (W.D. Tenn. 2008); *Kassa v. Kerry, Inc*., 487 F. Supp. 2d 1063 (D. Minn. 2007); *Andrako v. United*

14

*States Steel Corp.*, 632 F. Supp. 2d 398 (W.D. Pa. 2009); *Gatewood v. Koch Foods of Miss., LLC*, 569 F. Supp. 2d 687 (S.D. Miss. 2008) (finding various items of protective gear "clothes" within meaning of § 203(o)), *with Gonzalez v. Farmington Foods, Inc.*, 296 F. Supp. 2d 912 (N.D. Ill. 2003); *Perez v. Mountaire Farms, Inc.*, No. AMD 06-121, 2008 WL 2389798 (D. Md. June 10, 2008); *Spoerle v. Kraft Foods Global, Inc.*, 527 F. Supp. 2d 860 (W.D. Wis. 2007) (finding certain protective items not within meaning of "clothes" under § 203(o)).

The Department of Labor ("DOL"), the agency responsible for administering the FLSA, has issued opinion letters addressing the issue of clothes within the meaning of § 203(o). In an advisory opinion dated June 6, 2002, the DOL "stated that, for the purpose of applying § 203(o), clothes 'include items worn on the body for covering, protection, or sanitation.'" *Anderson*, 488 F.3d at 956 (citing Fair Labor Standards Act, U.S. Dep't of Labor, Wage & Hour Div. Advisory Op. Ltr. No. FLSA2002-2 (June 6, 2002)).[3] The DOL reiterated this position in an opinion letter issued May 14, 2007. Fair Labor Standards Act, U.S. Dep't of Labor, Wage & Hour Div., Advisory Op. Ltr. No. FLSA 2007-10 (May 14, 2007). In that opinion letter, the DOL concluded that its interpretation was not changed by the Ninth Circuit's decision in *Alvarez*. *Andrako*, 2009 WL 1765847, at *8 (citing *Id.*).

The term "clothes" is not defined in § 203(o). "In all cases of statutory construction, the starting point is the language employed by Congress." *Appleton v. First*

---

[3] This opinion letter withdrew two prior letters in which the DOL had taken the position that clothes in § 203(o) did not include protective safety equipment. *See Sisk*, 590 F. Supp. 2d at 1006.

*Nat'l Bank of Ohio*, 62 F.3d 791, 801 (6th Cir. 1995) (citations omitted). In addition, "we assume 'that the legislative purpose is expressed by the ordinary meaning of the words used.'" *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982) (quoting *Richards v. United States*, 369 U.S. 1, 9 (1962)). "The dictionary defines 'clothes' as 'clothing,' which itself is defined as 'covering for the human body or garments in general: all the garments and accessories worn by a person at any one time.'" *Anderson*, 488 F.3d at 955 (quoting Webster's Third New International Dictionary 428 (unabridged) (1986)); *see also Bejil v. Ethicon, Inc*. 269 F.3d 477, 480 n.3 (5th Cir. 2001) (citing Webster's definition of "clothing."). The court agrees that this broad definition of "clothes" is consistent with the common and ordinary understanding of the word. After considering these multiple authorities, the court concludes that the garments identified in the parties' stipulation that the plaintiffs don and doff fit within the definition of "clothes" as that term is used in § 203(o).

Section 203(o) also uses the term "changing" in relation to "clothes." "The definition of 'change' is similarly broad. It means 'to make different,' that is 'to modify in some particular way but short of conversion into something else.'" *Anderson*, 488 F.3d at 956 (citing Webster's 373). In view of this broad definition, the court agrees with the Eleventh Circuit's finding in *Anderson* that "[n]othing in the statute's language suggests that its application turns on whether one must fully disrobe or exchange one shirt, for example, for another. Therefore, we conclude that one need not exchange clothes to change clothes for the purpose of applying § 203(o)." *Id*.

16

In opposition to the application of the § 203(o) defense in this case, plaintiffs argue *inter alia* that the section is an exemption per *Alvarez,* 339 F.3d 894.[4] The court believes that the better interpretation is that the section is an "exclusion" as found by the Eleventh Circuit in *Anderson*. The district court in *Figas v. Horsehead Corp*., No. 06-1344, 2008 WL 4170043 (W.D. Pa. Sept. 3, 2008) explained the difference in part well as follows:

> The statutory structure of the FLSA also counsels against the rule of construction adopted by the Ninth Circuit in *Alvarez* and advanced by the Plaintiffs in this case. The provisions construed by the Supreme Court in *Arnold* [5] were contained in § 13(a) of the FLSA, which is codified at 29 U.S.C. § 213(a). Section 213(a) appears in the United States Code under a heading entitled "Exemptions." In contrast, § 203(o) appears in the "Definitions" section of the FLSA. The United States Court of Appeals for the Eleventh Circuit found this to be significant in *Anderson v. Cagle's, Inc*., 488 F.3d 945 (11th Cir. 2007), holding that § 203(o) was an "exclusion" rather than an "exemption." *Anderson*, 488 F.3d at 957 ("Had Congress sought to bestow upon § 203(o) the same status as the exemptions set forth in § 213, it easily could have amended § 213 instead of § 203(o), which is titled, not coincidentally, 'Definitions'").

*Id*. at *7 (internal citations omitted).

Plaintiffs also rely primarily on *Sproerle v. Kraft Foods Global, Inc*., 527 F. Supp. 2d 860 (W.D. Wis. 2007) and *Fox v. Tyson Foods, Inc*., No. CV-99-BE-1612-M, 2002 WL 32987224 (N.D. Ala. Feb. 4, 2002). Both cases found that donning and doffing

---

[4] The Supreme Court affirmed *Alvarez*, but did not discuss the application of § 203(o). *IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005).

[5] *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388 (1960) was one of the cases the Ninth Circuit relied on in *Alvarez* in reaching its conclusion that § 203(o) is an exemption.

17

sanitation and safety equipment was not changing clothes under § 203(o) and the personal protective equipment at issue did not fall within the meaning of "clothes" under that section. The *Sproele* court agreed with and relied on the holding in the *Fox* case. However, after the Eleventh Circuit decided *Anderson,* the *Fox* opinion as it related to pre- and post-shift clothes changing under § 203(o) was reversed. *Fox v. Tyson Foods, Inc*., Nos. 4:9-CV-1612-VEH, 4:06-CV-4676-VEH, 4:06-CV-4677-VEH, 2007 WL 6477624, at *1 (N.D. Ala. Aug. 31, 2007) ("The plaintiffs concede that *Anderson* reverses the court's conclusion that § 203(o) does not apply to their pre-and post-shift clothes changing activities."). The value of the *Sproele* opinion regarding this issue is thus vitiated by the reversal of *Fox*.

In any event, after considering the multiple and diverse authorities, the court concludes that the protective items at issue in this case are "clothes" within the meaning of § 203(o) and that donning and doffing them is "changing clothes" within the meaning of § 203(o). Therefore, because the CBA excludes from compensable time the time spent donning and doffing the protective items, summary judgment in favor of defendant on this portion of plaintiffs' claim is appropriate. Plaintiffs' claims for pre- and post-shift donning and doffing of protective and sanitary gear accruing from April 13, 2006, forward are barred. Such claims accruing before that date are not subject to the CBA and the § 203(o) defense.[6] However, these claims are subject to any findings of material issues of fact as discussed below.

---

[6] The issue of whether such claims accruing prior to April 13, 2006, are subject to the statute of limitations is not before the court.

18

## B. **Washing**

"[T]he vast majority of cases that have specifically discussed 'washing' in the context of § 203(o) have done so only in the context of washing one's body." *Burks v. Equity Group-Eufaula Div., LLC*, 571 F. Supp. 2d 1235, 1243-44 (M.D. Ala. 2008) (and cases cited therein); *see also Saunders v. John Morrell & Co.*, No. C88-4143, 1991 WL 529542, at *4 (N.D. Iowa Dec. 24, 1991) ("Every other source of authority this court found dealt with washing the person and not other items such as safety gloves."). In addition, the legislative history of § 203(o) reflects that the term "washing" was intended to be limited to "cleaning the person." *Burks*, 571 F. Supp. 2d at 1244 ("The Conference Report on the 1949 amendment stated with respect to that definition, '[t]he conference agreement limits this exclusion to time spent by the employee in changing clothes and *cleaning his person* at the beginning or at the end of each work day.'"); *see also Saunders*, 1991 WL 529542, at *4 ("Especially persuasive in the legislative history was the language 'cleaning his person.' S.Rep. No. 640 (July 8, 1949) *reprinted in* 1949 U.S.C.C.A.N. 2241, 2243.").

In light of this authority, the court finds that "washing" as that term is used in § 203(o) is limited to washing of the person and does not include the sanitizing and cleaning of the safety equipment and protective clothing performed by plaintiffs. The time properly excluded under § 203(o) in this case is the time plaintiffs spend washing their hands. Plaintiffs' claims based on that activity from April 13, 2006, forward are barred, and summary judgment in favor of defendant is appropriate. Claims for pre- and post-shift hand

19

washing accruing prior to April 13, 2006, are not barred by the § 203(o) defense.[7]   These claims are affected by any questions of fact discussed below.

### 3. Whether Donning, Doffing, and Washing Activities Are Integral and Indispensable

Plaintiffs contend that even if the pre-and post-shift donning and doffing of protective and sanitary gear and washing are barred by the CBA and § 203(o) defense, those activities can still be considered principal activities that can trigger the continuous workday. Koch Foods contends that the activities are barred from compensation under the Portal-to-Portal Act for several reasons.

Section 254(a)(2) of the Portal-to-Portal Act exempts "activities which are preliminary to or postliminary" to an employee's principal activities.  In *Steiner v. Mitchell*, 350 U.S. 247 (1956), the Supreme Court held "that activities performed either before or after the regular work shift . . . are compensable under the portal-to-portal provisions of the Fair Labor Standards Act if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed. . . ." *Id*. at 256.  An activity is integral and indispensable if it is "performed as part of the regular work of the employees in the ordinary course of business." *Duchon v. Cajon Co.*, No. 86-4009, 1988 WL 12800, at *4 (6th Cir. Feb. 22, 1988) (quoting *Dunlop v. City Elec., Inc.*, 527 F.2d 394, 401(5th Cir. 1976)).

---

[7] As with the claims for changing clothes, the issue of whether such claims accruing prior to April 13, 2006, are subject to the statute of limitations is not before the court.

20

Factors to consider in determining whether activities are integral and indispensable are: "(1) Whether the activity is required by the employer, (2) whether the activity is necessary for the employee to perform his or her duties, and (3) whether the activity primarily benefits the employer." *Bonilla v. Baker Concrete Constr., Inc*., 487 F.3d 1340, 1344 (11th Cir. 2007) (citing *Dunlop*, 527 F.2d at 401).

Application of this three-part analysis shows that the first element is met as to the protective items that are required to be worn such as the smock, boots, rubber gloves, and beard/hair nets. It is also met as to the hand washing that is required by Koch Foods. The element is not met as to the optional protective items such as the aprons and sleeves.

As to the second element, it is arguably met as to the required items and washing. This is true at least from the perspective that Koch Foods needs to produce an uncontaminated product. With regard to the optional protective items, since the plaintiffs choose to wear these items or not, they are not "necessary" to perform their duties.

With regard to the third element, whether the activity primarily benefits the employer, Koch Foods argues that the donning and doffing and washing primarily benefits the plaintiffs and the public. It argues that the required items and the optional items keep the plaintiffs clean, dry, and warm, and thus more comfortable. The items keep them from coming in contact with the processed poultry, which in turn ensures a wholesome product for the public. Koch also points out that multiple plaintiffs testified that they would voluntarily wear protective items even if not required to do so because they keep them warm, dry, and

21

more comfortable.

However, plaintiffs point out that Koch Foods principal activity is processing sanitary and uncontaminated chicken, and it needs its employees to wash and wear protect clothing to accomplish this goal. Koch Foods also needs to meet sanitary and safety requirements of federal law and is assisted in doing that by use of the protective and safety gear used by the plaintiffs. Thus, plaintiffs contend that Koch Foods primarily benefits from the donning, doffing, and washing.

The proof in the record demonstrates that both plaintiffs and Koch Foods are deriving benefits from these activities. As such, there is a material issue of fact as to which party receives the *primary* benefit from the washing and the donning and doffing of the required and optional protective items. Therefore, summary judgment is inappropriate on whether these are integral and indispensable activities.

### 4. Continuous Workday

In light of the findings above concerning the § 203(o) defense, the court needs to consider whether the activities barred by the CBA can still be considered principal activities to start the continuous workday. In *Sisk v. Sara Lee Corp.*, 590 F. Supp. 2d 1001, 1011 (W.D. Tenn. 2008), the district court relied on a 2007 DOL opinion letter and found that "once an activity has been deemed a section [203(o)] activity, it cannot be considered a principal activity."

22

However, the district court in *Gatewood v. Koch Foods of Miss., LLC*, 569 F.

Supp. 2d 687 (S.D. Miss. 2008), came to a different conclusion. The court held:

> Although the act of "changing clothes" itself is barred based on
> § 203(o) . . . the activities that occur after changing into sanitary
> gear and before changing out of sanitary gear are not impacted
> by the defense. If the jury determined that donning and doffing
> this gear was integral and indispensable, their commencement
> would trigger the "continuous workday rule," and might make
> the walking and waiting time at issue compensable.

*Id*. at 702 (citing *IBP, Inc. v. Alvarez*, 546 U.S. 21, 29 (2005)). The district court in *Figas*

*v. Horsehead Corp*., No. 06-1344, 2008 WL 4170043 (W.D. Pa. Sept. 3, 2008) also

addressed the issue and stated:

> The Court is not convinced that § 203(o) changes the "principal"
> nature of donning and doffing activities, or that "principal"
> activities somehow become "preliminary" or "postliminary"
> under the Portal Act simply because they are rendered
> noncompensable by a collective-bargaining agreement in
> accordance with § 203(o). A determination to the contrary
> would expand § 203(o)'s exclusion beyond donning, doffing and
> washing time to include post-donning and pre-doffing travel
> time, which is not mentioned therein.

*Id.* at *20; *see also Andrako v. United States Steel Corp*., No. 07-1629, 2009 WL 1765847,

at *11-12 (W.D. Pa. June 22, 2009) (following *Gatewood* and *Figas*). However, the district

court in *Figas* went on to note: "This does not mean that donning, doffing and washing

activities will always mark the beginning or the end of a continuous workday. Where such

activities are truly "preliminary" or "postliminary" under the Portal Act, they will not begin

or end the continuous workday." *Figas*, 2008 WL 4170043, at *20 n.17.

23

Therefore, if the donning, doffing, and washing excluded by § 203(o) are determined by the trier of fact to be integral and indispensable, those activities could commence the workday. This impacts plaintiffs' claims for unpaid sanitizing, travel, and waiting time at issue. *IBP*, 546 U.S. at 37 ("[D]uring a continuous workday, any walking time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity is excluded from the scope of [§ 254(a) of the Portal-to-Portal Act], and as a result is covered by the FLSA.")

5. Whether Donning, Doffing and Washing Activities are "Work"

As noted above, early on the Supreme Court described "work" in *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944) as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." In *Armour & Co. v. Wantock*, 323 U.S. 126 (1944), the Supreme Court "clarified that 'exertion' was not in fact necessary for an activity to constitute 'work' under the FLSA" *IBP*, 546 U.S. at 25. The Supreme Court in *Armour* "pointed out that 'an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen.'" *Id.* (quoting *Armour* at 133).

Circuit courts have determined that exertion is not required for an activity to be considered work. In *de Asencio v. Tyson Foods, Inc.*, 500 F.3d 361 (3d Cir. 2007), the

24

Third Circuit held that the correct focus on whether an activity is work is not whether it is cumbersome or requires exertion but whether it is "controlled or required by the employer and pursued for the benefit of the employer." *Id.* at 373. In *Ballaris v. Wacker Siltronic, Corp.*, 370 F.3d 901(9th Cir. 2004), the Ninth Circuit found that "the term 'work' as used in the FLSA, includes even non-exertional acts." *Id.* at 911 (citing *Alvarez*, 339 F.3d at 902). Thus, "exertion" is not required for an activity to be considered "work." The inquiry then focuses on whether Koch Foods requires the donning, doffing and washing and whether these activities primarily benefit Koch Foods.

Koch Foods does not require plaintiffs to wear the optional protective items. However, it does require certain washing and protective items be worn as discussed above. In any event, as explained herein, a material issue of fact exists concerning whether Koch Foods primarily benefits from these activities, which precludes a finding as a matter of law that they are "work." "The question of whether a particular set of facts and circumstances constitutes work under the FLSA is a question of law." *Farmer v. Ottawa County*, Nos. 98-2321, 99-1047, 2000 WL 420698, at *3 (6th Cir. Apr. 13, 2000). However, the nature of an employee's duties is a question of fact. *Ballaris,* 370 F.3d at 910 ("Whether an activity is excluded from hours worked under the FLSA, as amended by the Portal-to-Portal Act, is a mixed question of law and fact. The nature of the employees' duties is a question of fact, and the application of the FLSA to those duties is a question of law."); *see also Jordan v. IBP, Inc.*, 542 F. Supp. 2d 790, 803 (M.D. Tenn. 2008) (citing *Ballaris*).

25

6. <u>Bona Fide Meal Period</u>

Plaintiffs claim that they do not receive a bona fide lunch period because they perform donning, doffing, washing, and waiting during the uncompensated thirty-minute lunch period. Both parties have moved for summary judgment on the claim.

In *Hill v. United States*, 751 F.2d 810 (6th Cir. 1984), the Sixth Circuit stated the standard for whether a meal period is compensable under the FLSA. The Court established a "predominate benefit" standard. Pursuant to this test, "[a]s long a the employee can pursue his or her mealtime adequately and comfortably, is not engaged in the performance of any substantial duties, and does not spend time predominantly for the employer's benefit, the employee is relieved of duty and is not entitled to compensation under the FLSA." *Id*. at 814. Plaintiffs as the employees have the burden of proving that they perform substantial duties and spend their lunch period predominantly for the benefit of Koch Foods. *Myracle v. Gen. Elec. Co.*, No. 92-6716, 1994 WL 456769, at *5 (6th Cir. Aug. 23, 1994) (citations omitted).

The DOL has promulgated a regulation that defines a bona fide meal period which provides:

> Bona fide meal periods. Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while

> eating.  For example, an office employee who is required to eat
> at his desk or a factory worker who is required to be at his
> machine is working while eating.

29 C.F.R. § 785.19(a).  Such regulations are not binding on this court, but they can serve as

guidance.  *Hill*, 751 F.2d at 813.

In addition, plaintiffs contend that a thirty-minute meal break is statutorily

mandated by Tennessee law.  They rely on Tenn. Code Ann. § 50-2-103(h), which provides:

> Each employee shall have a thirty-minute unpaid rest break or
> meal period if scheduled to work six (6) hours consecutively,
> except in workplace environments that by their nature of
> business provide for ample opportunity to rest or take an
> appropriate break.  The break shall not be scheduled during or
> before the first hour of scheduled work activity.

Plaintiffs are correct that this Tennessee Code provision requires a thirty-

minute meal break.  However, section (j) of the statute states in part, "The department of

labor and workforce development shall enforce this section."  Plaintiffs have not presented

any authority that would permit enforcement of this statute in a personal cause of action as

the one before the court.

"The question of whether activities performed during a meal period are

predominantly for the benefit of the employer is 'highly individualized and fact-based.'"

*Jordan v. IBP, Inc.*, 542 F. Supp. 2d 790, 814 (M.D. Tenn. 2008) (citing *Beasley v. Hillcrest*

*Med. Ctr.*, 78 F. App'x  67, 70 (10th Cir. 2003); *Bernard v. IBP, Inc.* 154 F.3d 259, 265 (5th

Cir. 1998) ("Whether meal time is predominantly for the benefit of the employer is a question

of fact that is ordinarily resolved by the trier of fact after hearing all of the evidence.")).

During the meal break, plaintiffs may eat, smoke, go to their car, or leave the premises, but they must be back at their station with all their protective gear on and washed at the end of the thirty-minute break. Plaintiffs who leave the production floor at the meal break must remove gloves, apron, and sleeves if worn and the mandatory smock. Other standard items can remain on during the break. Plaintiffs have testified that they wash their hands and gear before going on break. They must wash their hands when they return to the production floor after break and also don whatever gear they removed before leaving on their break. These activities occur during the thirty-minute meal period; thus, plaintiffs contend that they do not receive the full thirty-minute break which is docked from their compensation.

The court finds that there are material issues of fact regarding whether the activities performed during the meal period predominantly benefit Koch Foods, since plaintiffs must don and doff protective gear and wash during the meal period. There is a dispute between the parties as to how much time these activities take. Accordingly, summary judgment is not appropriate on plaintiffs' claim concerning a bona fide meal period, and both parties' motions for summary judgment will be denied.

### 7. *De Minimis* Doctrine

Defendants contend that the *de minimis* doctrine precludes plaintiffs from recovering on their pre- and post-production activities whether or not they are compensable under the FLSA. In *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), the Supreme

Court stated that "[s]plit-second absurdities are not justified by the actualities of working conditions or by the policy of the [FLSA]. It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved." *Id*. at 692. In determining whether otherwise compensable time is *de minimis*, the court considers "(1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work." *Lindow v. United States*, 738 F.2d 1057, 1063 (9th Cir. 1984); *Brock v. City of Cincinnati*, 236 F.3d 793, 804 (6th Cir. 2001) (citing *Lindow*, 738 F.2d at 1062-63). However, whether a specific amount of time is *de minimis* is ultimately a question for the trier of fact. *Mt. Clemens Pottery*, 328 U.S. at 692.

At this point there has been no finding as to what activities are compensable so there can be no application of the *de minimis* doctrine on that basis alone. Furthermore, a determination of what time is *de minims* is fundamentally factual. In light of the record in this case, there are genuine issues of fact concerning the application of this rule which also makes summary judgment inappropriate.

### 8. Liquidated Damages

Plaintiffs have asserted a claim for liquidated damages and have moved for summary judgment on that claim. Defendants contend that there are issues of fact and summary judgment is not appropriate.

Pursuant to section 216(b) of the FLSA, "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Liquidated damages under the FLSA are compensation not punishment or a penalty. *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 840 (6th Cir. 2002) (citations omitted). "Although liquidated damages are the norm and have even been referred to as 'mandatory,' Congress has provided the courts with some discretion to limit or deny liquidated damages." *Martin v. Ind. Mich. Power Co.*, 381 F.3d 574, 584 (6th Cir. 2004) (internal citations omitted). "A district court, however, has the discretion not to award liquidated damages to a prevailing plaintiff if 'the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938.'" *Elwell*, 276 F.3d at 840 (citing 29 U.S.C. § 260; *Herman v. Palo Group Foster Home*, 183 F.3d 468, 474 (6th Cir. 1999)). "To prove that it acted in good faith, an employer 'must show that [it] took affirmative steps to ascertain the Act's requirements, but nonetheless violated its provisions.'" *Martin*, 381 F.3d at 584 (quoting *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 908 (3d Cir. 1991)). The burden on the employer to establish good faith is substantial. *Elwell*, 276 F.3d. at 840.

30

Based upon the state of the record as it presently exists, the court concludes that summary judgment on this issue is inappropriate. Questions of material fact have been found on multiple issues concerning plaintiffs' claims for recovery. The only grant of summary judgment in this opinion is given to Koch Foods on its § 203(o) defense. Thus, at this time, plaintiffs have not established a right of recovery or proved actual damages. As such, their dependent claim for liquidated damages cannot be established. *Cf. Myers v. Copper Cellar Corp.*, 192 F.3d 546, 552 (6th Cir. 1999) ("[B]ecause the plaintiffs have proved no actual damages, their dependent claim for statutory liquidated damages is moot."). Additionally, Koch Foods has presented sufficient evidence to raise a material issue of fact concerning whether it acted in good faith, which the court believes should be more fully presented at trial. Thus, in light of the record before it, the court is not prepared to find that plaintiffs are entitled to liquidated damages as a matter of law. Accordingly, plaintiffs' motion for summary judgment as to this claim will also be denied.

9. Plaintiffs' Motion for Court-Ordered Mediation

Plaintiffs have moved the court pursuant to Local Rule 16.4 to order the parties to participate in mediation after the ruling on the cross motions for summary judgment. Because the court has now ruled on the motions for summary judgment and has already ruled on the motion for decertification [docs. 164, 165], the objections raised by Koch Foods to this motion have been addressed. Therefore, plaintiffs' motion will be granted to the extent

31

it seeks an order requiring mediation.

## IV.

### *Conclusion*

For the reasons stated herein, Koch Foods' motion for summary judgment as to Count I will be granted in part and denied in part. It will be granted as to the defense based on § 203(o) and the CBA. The motion will be denied in all other respects. Koch Foods' motion for summary judgment as to Count II will be denied. Plaintiffs' motion for summary judgment will be denied. However, plaintiffs' motion to order mediation will be granted to the extent it seeks court-ordered mediation. An order consistent with this opinion will be entered.

ENTER:

        s/ Leon Jordan       
United States District Judge

32